The presiding Judge, (Bay,)
in charging the jury, observed to them, that there appeared to be a wide difference between servants in England, who were responsible to their masters, and the negro servants in Carolina. There the consciousness of this responsibility, and their dread of the consequences, made them extremely careful and cautious. Here sh.' slaves had nothing to pay damages with, aud no suit would lay against one for any civil injury; therefore the common law doctr ine in the books on this head, as well as in almost every other case, in which this class of people made one of the component parts of the matter in controversy, as in torts^ trespasses and negligences, &c. were not, nor could they possibly be applicable to cases of that nature in Carolina. This country must, from necessity, therefore, be ever governed in every such case by principles adapted to the regulation of slaves, who were unknown in Great Britain,
If the doctrine laid down by Mr. Blackstone in the extent in which he has placed it, was to prevail in this country, to make masters liable for the negligences of their slaves, it would place all the slave-owners in the state at the mercy of their numerous slaves, who might commit what trespasses, or be guilty of what neglects and omissions they thought proper, to the ruin of their masters.
The policy of this country had, however, in most cases substituted other salutary checks where slaves commit of. fences, which upon experience had been found to ensure as great a degree of security against these kind of of-fences, as in most other countries, where damages in civil suits were in all cases resorted to for redress and satisfaction, without ruining their owners.
He then mentioned to them, that there were many cases, however, where masters were answerable for the conduct oi heir negro sen ants ; as in all cases where negroes are permitted to perform any public duty, or to carry on any *349 handicraft trade or calling, or to perform or superintend any other kind of business where public confidence is to be reposed : as, for instance, keepers of public ferries. If ne-groes perform their duties so negligently or carelessly that a traveller’s horse or carriage is lost or injured, the owners are liable $ so if a negro blacksmith prick or injure a horse in shoeing, the master is liable ; so also of a negro tay lor who spoils clothes or embezzles cloth, or a negro miller who takes more toll than the law allows, &In all those cases the master is liable in damages for the misconduct of his slaves ; but in no case, where any unauthorized act is done by a slave in his private capacity, without the knowledge or approbation of his master. That in the present instance, it did not appear that this inj ury was within any one of the rules in which masters were responsible, but that it was attributable to an accident, rather than to any other cause whatever.
The jury, however, contrary to the opinion of the presiding judge, found a verdict for the plaintiff to the whole amount of the value of the corn.
A new trial was moved for on the grounds that the verdict was against law, and the opinion of the presiding judge. Upon the argument of this motion, all the grounds which had been taken on both sides on the trial, were again taken and amplified, but no new ones insisted on by either party.
The judges after considering this case maturely, were unanimously of opinion, that this verdict should be set aside, and a new trial granted. They considered this as a new case, and one involving in it principles of very serious import, to the planters and all other slave-owners in Carolina. They observed, that the rigid doctrine relating to masters and servants in England, where masters were answerable for the neglects of their servants, and the servants *350 were again answerable to their masters, was by no means applicable to the local situation and circumstances of Carolina.i where almost the whole of our servants are slaves. They were in general a headstrong, stubborn race of people, who had a volition of their own, and the physical power of doing great injuries to neighbours and others, without the possibility of their masters having any control over them ; especially when they happened to be at a distance from them ; and experience had taught us how little they adhered to advice and direction when left alone. It would, indeed, under these circumstances, be a most dangerous thing, to make their masters liable in damages for the unauthorized acts of their slaves, to the extent contended fot-ón behalf of the plaintiff. Other salutary checks have been found, by experience, more efficacious than that of recovering damages from masters. But in the present case, it does not appear that the negroes themselves had been guilty of any intentional act to injure the plaintiff in this action ; they had only conformed to the common and usual custom of the country, in carrying fire into the field where they were going to labour ; and it is a very doubtful point, whether they were to blame or not. The morning was still, and the fire had burnt down, but towards the middle of the day, the wind arose, and blew up the sleeping embers which communicated the fire to the building ; this, therefore, had more the appearance of accident than negligence. But be that as it may, the master, Mr. Trice, knew nothing of it; he was from home and did not even hear of it until his return. To make him therefore chargeable, would be very rigorous and unjust.
They admitted the doctrine of responsibility of masters, for the acts of their servants, in all cases in the zuay of trade, or any public employment; or where any injury was occasioned to another, by any act done by a servant in pursuance of his master’s directions. In all these cases, the master is liable for the act of his servant in damages occasioned by the misconduct of his slave, but not for any un *351 authorized or casual act committed without the knowledge or approbation of the master.
Rule for new trial made absolute without costs.
All the Judges present.